Elizabeth H. STAPLES

v.

Deanna D. KING et al.*

Supreme Judicial Court of Maine.

Argued June 8, 1981.

Decided Aug. 10, 1981.

Marden, Dubord, Bernier & Chandler, Alton Stevens (orally), Waterville, for plaintiff.

* Recaptioned. The caption of the case in Probate Court read "In re Estate of Joseph L. Staples."

Burton G. Shiro (orally), Waterville, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

GODFREY, Justice.

Plaintiff Elizabeth H. Staples appeals from an order of the Probate Court dismissing her complaint. Mrs. Staples had petitioned the Probate Court to declare void certain revocable inter vivos trusts that her husband, Joseph L. Staples, had created shortly before he died intestate. On appeal Mrs. Staples contends that the Probate Judge erred as a matter of law in concluding that her complaint failed to state a claim upon which relief could be granted and that the Probate Court lacked jurisdiction to impose a constructive trust on the defendants. We sustain the appeal.

Mr. Staples died on February 19, 1979. On November 16, 1978, he had executed seven written inter vivos trusts. In six of the trusts the corpus consisted of stocks or bonds; in the seventh the corpus was a bank account. Two of the trust instruments named Deanna D. King, the Staples' only child, as the sole beneficiary; two other instruments named Joanna King, a grandchild, as the sole beneficiary; the other three named Angela D. King, another grandchild, as the sole beneficiary.

In those trusts that employed stocks or bonds as the corpus, Mr. Staples reserved various rights and powers to himself as trustee during his lifetime; including the following: the power to pay or cause to be paid, all income or stock distributions to himself; the right to register the stocks in his own name; the right to redesignate the beneficiary should the current beneficiary die in the settlor's lifetime, with a reversion to the settlor's estate in default of such redesignation; and the power to revoke the trust in whole or in part without the beneficiary's consent and without notice to the beneficiary. Two of the trusts contained a direction to the successor trustee to distribute the trust principal to the settlor should he become sick or disabled. In the trust containing the bank account, Mr. Staples reserved the power to direct that interest be distributed to him rather than compounded; the right to revoke the trust pro tanto by withdrawing money from the account; and the right to redesignate the beneficiary should the current beneficiary die before the settlor, with a reversion to his estate in default of such redesignation. At Mr. Staples' death Deanna D. King became the successor trustee of the trusts for the benefit of the grandchildren, and one Ruth E. Brackett became successor for the benefit of Deanna D. King.

On June 4, 1980, Mrs. Staples filed in Probate Court a complaint against the beneficiaries and successor trustees of Mr. Staples' trusts. In Count I of that complaint Mrs. Staples claimed that Mr. Staples had executed the trusts when he knew he was terminally ill, and further alleged that the trusts were "illusory, colorable, and so far testamentary as to be invalid under 18 M.R.S.A. § 1057 et seq., as amended." On those grounds Mrs. Staples sought to have the trusts declared void and the corpora of the trusts included in Mr. Staples' intestate estate. Mrs. Staples' ultimate objective was to render the trust corpora available for her distributive share of her husband's estate.

In Count II of that complaint Mrs. Staples alleged that the trust beneficiaries had caused Mr. Staples to execute the trusts through fraud or undue influence. Mrs. Staples sought either a money judgment equal to the value of the trust assets attributable to each beneficiary, or an equitable order holding each beneficiary a constructive trustee for the benefit of Mrs. Staples.

Finally, in Count III of the complaint Mrs. Staples sought a money judgment against Ruth Brackett, alleging that she had caused Mr. Staples to transfer his estate to others through fraud or undue influence.

The defendants answered and moved to dismiss the complaint on the grounds that it failed to state a claim upon which relief could be granted and that the Probate Court lacked subject-matter jurisdiction of

the action. Thereafter, apparently anticipating the defendant's argument that her complaint sought relief at law rather than in equity, Mrs. Staples voluntarily dismissed Count III of her complaint and those portions of Count II that sought recovery of a money judgment from the defendants.

After a hearing on the defendants' motion to dismiss, the Probate Court dismissed all the remaining portions of Mrs. Staples' complaint. With regard to Count I the probate judge ruled, "Count I is hereby dismissed for failure to state a claim upon which relief may be granted. Relief is apparently sought pursuant to 18 M.R.S.A. § 1057. The court does not read that statute to support this cause of action." Concerning Count II the probate judge stated simply, "Count II is dismissed. *Cyr v. Cote*, 396 A.2d 1013 (Me.1979)." After Mrs. Staples moved the Probate Court to clarify its order, the judge explained that he had dismissed Count II because the Probate Court lacked subject-matter jurisdiction to impose a constructive trust on the defendants.

### 1.
### *The Cause of Action to Invalidate the Trusts*

On appeal Mrs. Staples argues that 18 M.R.S.A. § 1057, as amended by P.L.1965, ch. 425, § 11, the former provision for the widow's elective share,[1] evidences a legislative policy that a decedent should not be permitted, in effect, to disinherit his surviving spouse by making transfers that deplete his estate. Mrs. Staples does not condemn all inter vivos transfers, but only those, such as her husband's trusts, that allow the donor to retain substantial incidents of ownership of the transferred property during his lifetime. In addition, Mrs. Staples regards her husband's trusts as informal substitutes for a will and thus prohibited by

virtue of the Statute of Wills then in effect, 18 M.R.S.A. § 1, as amended.[2] The defendants reply that persons have an unfettered right to dispose of their property as they wish during their lifetime. While acknowledging that an inter vivos trust may be held invalid as against a surviving spouse if the decedent executed the trust with intent to retain practical ownership of the corpus during his life, the defendants contend that the trusts in this case manifest no such intent. We must conclude that the defendants have confused the evidentiary merits of Mrs. Staples' action with the facial validity of her claim.

This Court has repeatedly held that a complaint should not be dismissed for failure to state a claim upon which relief may be granted unless it is clear from the face of the complaint that the plaintiff is entitled to no relief under any state of facts that could be proved in support of the claim. *See, e. g., Hildebrandt v. Department of Environmental Protection*, Me., 430 A.2d 561 (1981). Because the probate judge dismissed Count I *for failure to state a claim upon which relief may be granted*, we need not decide whether Mr. Staples in fact executed the trusts with intent to retain dominion over the trust property. We need only determine whether the facts alleged in Mrs. Staples' complaint, if proved, would entitle her to the relief she requests.

This Court has heretofore recognized the right of a married person to deplete his or her estate, even with intent to defeat the claims of the spouse, as long as that depletion is accomplished through complete gifts. *See, e. g., Lambert v. Lambert*, 117 Me. 471, 104 A. 820 (1918). However, where the married person purports to transfer property out of his estate but in fact retains substantial control over the property for his

---

**1.** Section 1057 was repealed by P.L.1979, ch. 540, enacting the Uniform Probate Code, effective January 1, 1981.

**2.** At the time Mr. Staples died, 18 M.R.S.A. § 1 provided in pertinent part:

> A person of sound mind and of the age of 18 years and a married person, widow or widower of any age may dispose of his real and personal estate by will, in writing, signed

by him, or by some person for him at his request and in his presence, and subscribed in his presence by 3 credible attesting witnesses . . . .

That section was repealed by P.L.1979, ch. 540, § 24–C, and its provisions were replaced by cognate provisions of the Uniform Probate Code, Title 18–A, effective January 1, 1981.

lifetime, such a transfer will not be effective against the claims of the surviving spouse:

> [W]here the transfer is a mere device or contrivance by which the husband, retaining to himself the use and benefit of the property during his life, and not parting with the absolute dominion over it, seeks at his death to deprive his widow of her distributive share, it is to be regarded as fraudulent as to the wife and void.

*Wright v. Holmes,* 100 Me. 508, 513, 62 A. 507, 509 (1905). An example of such an illusory transfer is found in *Brown v. Crafts,* 98 Me. 40, 56 A. 213 (1903). There the decedent had transferred to his daughter certain stocks, bonds, and mortgages by means of written instruments that contained all the formalities necessary for the transfer. However, upon receiving the property, the daughter issued to the decedent a power of attorney that authorized him to recover possession of the property, to manage, control, and receive the income from the property, and finally to pledge the property for personal debts and to sell it to satisfy his indebtedness. The daughter then redelivered the property to the decedent. After reviewing these transfers, the Law Court concluded that they constituted a single, illusory transaction. Although the decedent purported to make a gift, his retention of dominion over the property during his lifetime rendered the transaction an invalid substitute for a will. Because the decedent, in substance, owned the property at his death, the Court ruled that the property should have been included in his estate and thus subject to the spouse's distributive share.

■ We have not had occasion to apply the holding in *Brown v. Crafts* to a situation in which the transfer being challenged was an inter vivos trust. A transfer that would be incomplete as an outright gift may yet be valid as a gift in trust. The mere fact that the settlor appoints himself trustee and retains powers to revoke the trust and to use the trust corpus for his own

benefit during his lifetime is not in itself a sufficient basis for regarding an inter vivos trust as incomplete, *Restatement (Second) of Trusts* § 26, Comment h (1959), or invalid for non-compliance with the Statute of Wills, *id.* § 57.

However, courts in growing numbers have held that where the effect of an inter vivos trust is to remove assets from the decedent's estate that would otherwise have been available for the surviving spouse's distributive share, and the decedent has reserved to himself the practical attributes of ownership of the trust property for his lifetime, the trust property may be subject to claims made by the surviving spouse under the laws regulating succession to decedents' estates.[3] The case most often cited for that proposition is *Newman v. Dore,* 275 N.Y. 371, 9 N.E.2d 966 (1937). In *Newman,* the New York Court of Appeals recognized the right of a married person to dispose of his property before death, even with the motive of avoiding his surviving spouse's claims to his estate. Because the spouse has only an expectancy of receiving a distributive share of the decedent's estate during the latter's lifetime, the spouse has no legal interests that can be infringed by completed inter vivos transfers. However, in the view of the New York court, the statutes granting the surviving spouse an elective share of the decedent's estate, in conjunction with the statutes governing the formalities of wills, limit the settlor's capacity to create inter vivos trusts that deplete the spouse's potential share in his estate while allowing the settlor to exercise substantial control over the trust property during his life. Therefore, the *Newman* court concluded, if a settlor retains so much power over the trust property that he remains the owner of it for all practical purposes during his lifetime, the trust will be held ineffective as against the claims of the surviving spouse even though the trust may not be so testamentary in nature as to be invalid under the statute of wills. The critical inquiry under *Newman v. Dore* is not

---

**3.** The Uniform Probate Code contains provisions that may be dispositive of future cases of this general type. *See* 18–A M.R.S.A. art. 2, pt. 2 (§§ 2–201 to 2–204) (1981).

whether the settlor intended to disinherit his spouse—an irrelevant factor if the settlor has actually divested himself of his property—but rather whether the settlor intended to surrender complete dominion over the property to the trustee and trust beneficiaries. *See Estate of Barnhart*, 194 Colo. 505, 574 P.2d 500 (1978); *Castellano v. Cosgrove*, 280 So.2d 676 (Fla.1973); *Matter of Nemecek's Estate*, 85 Ill.App.3d 881, 41 Ill.Dec. 157, 407 N.E.2d 655 (1980); *Ackers v. First National Bank*, 192 Kan. 319, 387 P.2d 840 (1964); *Kempf v. Kempf*, 288 Minn. 244, 179 N.W.2d 715 (1970); *Moore v. Jones*, 44 N.C.App. 578, 261 S.E.2d 289 (1980); *Land v. Marshall*, 426 S.W.2d 841 (Tex.1968); 1 *Scott on Trusts* § 57.5 (3d ed. 1967 & Supp.1981); Annot., 39 A.L.R.3d 14 (1971).

We find the reasoning of *Newman v. Dore* persuasive. Although 18 M.R.S.A. § 1057 did not, by its express terms, support Mrs. Staples' cause of action, that statute expressed a legislative policy that a surviving spouse may not be completely disinherited by the decedent. Section 1057 of title 18 permitted the surviving spouse to elect to take the equivalent of her intestate share of the decedent's estate when the decedent has left a will. It would be irrational to allow a married person to circumvent the statute by simply refraining from making a will and, instead, executing trusts which appear to deplete his estate but which reserve for himself, in effect, the benefits of owning the trust property. As the *Newman* court noted, "from the technical point of view such a conveyance does not quite take back all that it gives, but practically it does." 275 N.Y. at 381, 9 N.E.2d at 969.[4]

In the present case Mrs. Staples was entitled to have her husband's trusts

**4.** Our conclusion in this regard is strengthened by the legislature's subsequent repeal of 18 M.R.S.A. § 1057 and by the enactment of section 2–202 of the Uniform Probate Code, P.L. 1979, ch. 540, § 1. That section grants the surviving spouse an elective share of the decedent's "augmented estate." The augmented estate consists of the decedent's estate, reduced by the amount of certain expenses, allowances, and claims, and increased by the value of certain inter vivos transfers made by the decedent.

declared invalid as against her upon proof that when he executed the trusts he did not intend to relinquish ownership of the trust property—or, in the more archaic language used in Mrs. Staples' complaint, upon proof that the trusts were "illusory, colorable, and so far testamentary as to be invalid under 18 M.R.S.A. § 1057." Although we intimate no opinion concerning the merits of Mrs. Staples' action, we must conclude that Count I of her complaint did state a claim upon which relief could be granted. Accordingly, the probate judge erred as a matter of law in dismissing Count I.

## 2.
### *The Probate Court's Jurisdiction to Impose a Constructive Trust*

Mrs. Staples argues that the Probate Court has equity jurisdiction of all controversies involving trusts created by written instrument. In Mrs. Staples' view, her complaint invoked the Probate Court's jurisdiction because in it she challenged a written trust and, in Count II, sought the purely equitable remedy of a constructive trust against the defendants. In contrast, the defendants characterize Mrs. Staples' complaint as seeking the legal remedy of a declaratory judgment. Citing this Court's opinion in *Cyr v. Cote*, Me., 396 A.2d 1013 (1979), the defendants further contend that because a probate court has no power to create a will that was omitted by fraud, it also lacks power to create a constructive trust in place of an express trust. Finally, the defendants contend that because Mrs. Staples' claims raised factual issues that could be resolved by a jury, and because jury trial is not provided in probate court, that court had no power to adjudicate the case. We find the defendants' arguments unpersuasive.

In general, the inter vivos transfers that are included in the augmented estate are those in which the decedent retained significant control over the transferred property during his lifetime. One of the main purposes of section 2–202 is to prevent married persons from making non-probate transfers with the aim of defeating the surviving spouse's right to a share of the probate estate. *See* 18–A M.R.S.A. § 2–202 Uniform Probate Code Comment (1981).

**412**

Under 4 M.R.S.A. § 252 (1979), the Probate Court is granted jurisdiction in equity, concurrent with the Superior Court, "of all cases and matters relating to the administration of the estates of deceased persons, to wills and to trusts which are created by will or other written instrument." Hence, the relevant inquiries in determining whether the Probate Court has subject-matter jurisdiction of an action are, first, whether the case relates to an estate, will, or a trust; and second, whether the relief sought is equitable rather than legal. It is immaterial whether the action may present factual as well as legal questions, for the probate judge is fully competent to serve as a finder of facts. *See* 4 M.R.S.A. § 304 (1979); 18–A M.R.S.A. § 1–302 (1981).

Unquestionably Mrs. Staples' action related to a trust created by written instrument. Therefore, the only question is whether the Probate Court, sitting as a court of equity, had the power to grant the relief that Mrs. Staples requested. Mrs. Staples' complaint was not framed as a petition for declaratory judgment, as is permitted under 14 M.R.S.A. § 5956 (1980). Even had the complaint been so framed, it could have been addressed to the Probate Court's equity jurisdiction. *See In re Estate of Cassidy*, Me., 313 A.2d 435, 437 (1973). Furthermore, Mrs. Staples petitioned the Probate Court for an equitable order voiding her husband's trusts and imposing a constructive trust on the defendants who had received the trust property. Nothing on the face of the complaint suggests that Mrs. Staples' claims were legal rather than equitable.

We are aware that certain language in our opinion in *Cyr v. Cote*, Me., 396 A.2d 1013, 1017 (1979), may be understood to imply that in cases where a will or trust is held invalid, the Probate Court has the power only to strike the offending portions of the instrument and cannot impose a constructive trust on parties who have already received property under the stricken provisions. That discussion was limited to the traditional powers of the Probate Court, and did not purport to describe the Probate

Court's powers under the specific grant of equity jurisdiction contained in 4 M.R.S.A. § 252. Although the traditional Probate Court may have lacked jurisdiction to grant equitable relief in a proceeding challenging a will or trust, the modern Probate Court, endowed with equity jurisdiction in all matters relating to the administration of decedents' estates, has no such limitation on its adjudicatory powers. Accordingly, the probate judge erred in concluding that the court lacked jurisdiction to impose a constructive trust upon the defendants.

The entry is:

Appeal sustained.

Judgment of dismissal entered by Probate Court vacated; case remanded to the Probate Court for further proceedings consistent with the opinion herein.

All concurring.